IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NRT Texas LLC d/b/a Coldwell Banker Realty and Coldwell Banker, Realtors, § § § § § *Plaintiff,* § § v. § § Jennifer Wilbur, et al., § § *Defendants.* | Case No. 4:22-cv-02847 |

## ORDER ON MOTION FOR STAY

Defendants Wilbur, Johnson, Sheinall, and Stacy Incorporated ("Premier") (collectively, "Defendants") moved for a stay of the Court's November 7, 2022 discovery order (Dkt. 62) that required, among other things, Defendants to produce documents by November 21, 2022.[1] Dkt. 73. After carefully considering the motion, the Court finds that Defendants have not met their burden to satisfy the requirements for a stay. Accordingly, it is **ORDERED** that Defendants' motion is **DENIED**.

## I. Legal Standard

When considering a motion to stay a magistrate judge's order, a court must consider: (1) whether the movant has made a showing of likelihood of

---

[1] For clarity, Defendant Taffie Dolson does not join in the motion for stay.

success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest. *Int'l Fire & Safety, Inc. v. H.C. Servs., Inc.,* 2007 WL 3231654, at *1 (S.D. Miss. Oct. 30, 2007) (quoting *O'Bryan v. McKaskle,* 729 F.2d 991, 993 (5th Cir. 1984)). While the movant need not always show a probability of success on the merits, it bears the burden of showing that the other three factors "*weigh[ ] heavily in the favor of granting the stay.*" *Id.* (emphasis in original).

## II. Likelihood of Success on the Merits

Defendants did not carry their burden of showing they have a substantial likelihood of successfully appealing the discovery order. "[T]his burden is a steep hill to climb because ... it is difficult to establish a sufficient likelihood of success given the deferential standard of district judge review ...." *PlayUp, Inc. v. Mintas*, 2022 WL 10967692, at *3 (D. Nev. Oct. 18, 2022). That is why "federal courts often deny motions to stay a magistrate judge's discovery orders." *Id.* (quoting *Montgomery v. Risen*, 2015 WL 5167628, at *2 (S.D. Fla. Sept. 3, 2015)). Defendants' motion does not warrant a different result.

Defendants insist that they lack sufficient time to produce the responsive documents and communications that were ordered to be produced by November 21, 2022. According to Defendants, the only relevant time frame is

the two-week period between the Court's latest November 7 discovery order and its November 21 deadline for production. Defendants argue that this timeline is unfair and unreasonably short compared to the "normal, 30-day time frame" contemplated by Fed. R. Civ. P. 34. Dkt. 73 at 4. Relying on their forensic expert, LCG's Ken Tisdel, Defendants insist that the November 21 deadline cannot be met for myriad reasons.

The history of these proceedings, however, confirms that Defendants' delayed production stems not from an onerous, short-notice order, but from failures by Defendants' counsel to properly and timely collect the requested information from the start. Given those failures, Defendants have not shown that a district judge is likely to find that the deadlines themselves are "clearly erroneous or contrary to law"—a highly deferential standard. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

For instance, Defendants knew from the outset that Coldwell Banker was maintaining that Defendants had used their Coldwell Banker email accounts to communicate with their personal email accounts. They also knew of Coldwell Banker's allegations that those emails evinced Defendants' wrongdoing, as examples of those emails are cited and cribbed throughout Coldwell Banker's August 22, 2022 application for preliminary injunction and related relief. *See* Dkt. 1 at 3-5. Coldwell Banker then sought additional "Communications," including e-mails, from Defendants in its August 31, 2022

requests for production. *See* Dkt. 38 at 4 (attaching the Requests for Production to each defendant as Exs. B-G). Notably, each of Coldwell Banker's five requests for production sought "Communications," and Defendants never lodged a categorical objection to the collection of text messages and personal e-mail accounts. Such an objection would have been baseless in light of Defendants' use of these mediums to conduct business.

Once Coldwell Banker propounded those discovery requests, Defendants were obligated to collect and review information that would be responsive to Coldwell Banker's request and within the scope of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(1). Defendants' counsel was obligated to certify that a reasonable inquiry had been conducted prior to responding to Coldwell Banker's requests. Fed. R. Civ. P. 26(g). Though the parties' discovery disputes resulted in Coldwell Banker's filing of a motion to compel (Dkt. 38) and the Court's subsequent orders (Dkts. 53, 59, 62), Defendants were never relieved of their obligation to participate in discovery—and especially not relieved of their obligation to search for and collect communications from repositories that were known to both counsel and the parties.

The obligations under the Rules applied to each of Defendants, though counsel represented at the November 16, 2022 hearing that counsel and LCG had prioritized the collection of Wilbur's ESI, which in turn caused delays for all Defendants. Wilbur's ESI in particular has been the subject of myriad

filings and hearings, and further proceedings may yet be necessary. But what Mr. Tisdel's affidavit confirms is that Defendants' counsel only instructed LCG to re-image and process Wilbur's ESI on November 7. Dkt. 73-1 at ¶ 2 (Affidavit of K. Tisdel). In other words, two months passed between Defendants' initial responses to Coldwell Banker's requests for production—and only after the November 7 order did counsel instruct LCG to search for and process the ESI that is subject to the Court's November 21 deadline.[2]

Defendants' reasons for delay are unavailing. Defendants' objections to Coldwell Banker's preferred format of production did not relieve them from their obligations to produce information at all. From August 31, Defendants were on notice that they should either begin collecting and processing responsive ESI in Coldwell Banker's format, or at least to produce their information in a "reasonably usable form." Fed R. Civ. P. 34(a)(1)(A); *see generally Jaso v. Bulldog Connection Specialists LLC*, 2015 WL 11144603, at *6 (S.D. Tex. Oct. 15, 2015). Defendants chose to do neither.

---

[2] This delay is all the more inexcusable in light of Wilbur's September 9, 2022 deposition, where she claimed that all her personal emails predating June 24, 2022 were either deleted or otherwise missing. Dkt. 38 at 14 (quoting Ex. P-1 at 107-08). Even Defendants acknowledge that such potential spoliation "rightfully" concerned the Court. Dkt. 73 at 4. Yet Defendants' counsel still did not promptly investigate whether the data from Wilbur's @me.com personal cloud account remained available—despite having retained an ESI vendor, LCG, in early September 2022 who had imaged Wilbur's devices on September 7 and September 12, 2022. *See infra* Part V; *see also* Dkt. 73-1 ¶ 2.

Defendants' decision to disregard discovery obligations until faced with explicit court-ordered deadlines flies in the face of the Rules. Their subsequent difficulties in meeting the court-ordered deadlines results from their pattern of improper discovery practices, not clear error in the deadlines themselves.

Accordingly, Defendants are not likely to succeed on their appeal. The first factor cuts against granting their motion.

### III.  Irreparable Injury

Defendants also fail to identify any irreparable injury that would be sustained if the Court's order is not stayed. Defendants focus on the purported unfairness of two-week timeline they had to comply with the Court's order, but point only to their fear of "a range of sanctions" from the Court. Dkt. 73 at 3. This preemptive concern that the Court may enforce its own order is not irreparable harm.

### IV.  Prejudice to Coldwell Banker

Defendants argue that allowing additional time for them to produce documents would not harm Coldwell Banker. *Id.* at 6-7. They also complain that they offered a stipulation that would bind them to an agreed injunction against solicitation of Coldwell Banker employees, but that Coldwell Banker and the Court insist on creating a "Herculean task" under a sense of false urgency. *Id.* at 7.

6

These statements defy reality. As of now, none of Defendants are enjoined from committing further acts in violation of their restrictive agreements. That is why Coldwell Banker has been insisting on a preliminary injunction hearing. The hearing was delayed, repeatedly, because of Defendants' representations about the timing and feasibility of pre-hearing production. Dkts. 29, 38. And further delay would only prolong the length of time that Coldwell Banker must wait before it has the opportunity to present its case to the Court.

Moreover, Defendants know full well that Coldwell Banker seeks to enjoin more than the alleged violations of the non-solicitation clauses. The relevant covenants and causes of action were address in detail in the Court's memorandum and recommendation (Dkt. 29), which was issued after Defendants filed a written response objecting to each proposed restraint (Dkt. 15). This includes Defendants' alleged breaches of confidentiality, breaches of the non-competes, and use of trade secrets. As such, a partial stipulation would not obviate the need to hold a preliminary injunction hearing, and Coldwell Banker continues to incur the consequences of the delay.

## V. Public Interest

Finally, Defendants argue that the November 21 production deadline is unrealistic and unnecessarily burdensome and that their right to a fair and equitable process has been undermined. Dkt. 73 at 7-8. In so arguing,

7

Defendants fail to identify how staying the Court's discovery order promotes the *public* good—not just Defendants'. And in any event, the Court finds that the public interest is better served by enforcing counsel's duty to comply with the Rules and participate in discovery in good faith.

As described *supra* in Section II, Defendants are only in the position of having to produce a large number of documents in a two-week time period because they declined to begin the process as soon as their obligations under the Rules arose. Moreover, Defendants' counsel has admitted that he voluntarily expanded the search terms proposed by Coldwell Banker. *Cf.* Dkt. 51 (Coldwell Banker's proposed discovery order and search terms, including far less than the "208 search terms and 59 search names" that Defendants plan to produce). Allowing Defendants to complain about delays of their own making would reward them while undercutting Coldwell Banker.

Indeed, the timing of Defendants' ESI collection and processing is all the more concerning given that Defendants previously submitted an invoice to complain of the cost of electronic discovery. Dkt. 50-6. While, again, the nature of and reasons for discovery delays are constantly evolving, the invoice makes several things clear. First, LCG was retained as Defendants' e-discovery vendor at least as early as September 2022. Mr. Tisdel may not have been personally involved yet, but LCG is not "coming into the process somewhat late." *Cf.* Dkt. 73-1 at ¶ 7 (Tisdel Affidavit). LCG had access to Wilbur's iPhone

12 on September 7 and her iPhone 13 and iPad on September 12. *Id.* at ¶ 2. On those same days, LCG's invoice reflects phone calls between LCG and Steve Williard to discuss the search protocol for Wilbur's ESI. Dkt. 50-6 at 1-2. LCG and Williard conferred again on September 22, after Coldwell Banker filed its motion to compel. *Id.* at 4.

At least for this motion, it does not matter why counsel did not promptly instruct LCG to begin the search and production of electronically-stored communications during these calls (in any reasonably usable form). What *does* matter is that Defendants had retained LCG shortly after Coldwell Banker served discovery, such that any decisions to withhold instructions to LCG cut against Defendants' entitlement to a stay. The public interest favors discouraging such delay tactics and disregard for discovery obligations.

## VI. Conclusion

Accordingly, Defendants have failed to meet their burden on any of the factors. The Court therefore **ORDERS** that Defendants' motion to stay (Dkt. 73) be **DENIED**.

Signed on November 21, 2022, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge