United States District Court
Southern District of Texas
**ENTERED**
January 22, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NRT Texas LLC d/b/a Coldwell Banker Realty and Coldwell Banker United, Realtors, §§§§§ | |
| *Plaintiff,* §§ | Case No. 4:22-cv-02847 |
| v. §§ | |
| Jennifer Wilbur, Taffie Dolson, Catherine Johnson, Linda Sheinall, and Stacy Incorporated d/b/a Berkshire Hathaway HomeServices Premier Properties, §§§§§§ | |
| *Defendants.* § | |

## ORDER GRANTING IN PART MOTION FOR FEE SHIFTING[1]

This case has an unfortunate history, spawning myriad hearings to address deficiencies in discovery. Although the discovery disputes started more than a year ago, they eventually led to serious accusations of spoliation.

Those issues largely have been mooted by a settlement between Plaintiff NRT Texas LLC ("Coldwell Banker") and nearly all of Defendants. The parties are working toward resolving the claims against one last individual defendant. *See* Dkt. 245 at 1-2 (explaining settlement); Dkt. 246 (permanent injunction).

---

[1] Motions for sanctions based on discovery abuses are non-dispositive matters that a magistrate judge can resolve. *See Merritt v. Int'l Brotherhood of Boilermakers*, 649 F.2d 1013, 1018 (5th Cir. 1981) (per curiam).

Coldwell Banker, however, made clear that this disposition does not moot or otherwise resolve an earlier motion for sanctions, Dkt. 112, sought against Steve Williard, who previously represented Defendants Jennifer Wilbur, Linda Sheinall, and Stacy Incorporated.

Having presided over all the discovery hearings, the undersigned is well-acquainted with the issues.  Only a subset of the parties' filings and the many hearings relate to the motion for fee-shifting against Mr. Williard.  After carefully considering the motion, response, Dkt. 122, reply, Dkt. 136, the record of proceedings, and the applicable law, the Court grants in part and denies in part Coldwell Banker's motion for fee-shifting.

## <u>Background</u>

On September 21, 2022, Coldwell Banker filed a motion to compel responses to its August 31, 2022 request for production of documents.  Dkt. 38. At that time, the date of the preliminary injunction hearing was approaching quickly, although the Court later granted Coldwell Banker's request to push it from September 29 until November 8, 2022.[2]  Dkt. 42 (granting Dkt. 41).

Among other cited deficiencies, Coldwell Banker's motion to compel discovery noted that Wilbur had produced zero emails, Dkt. 38 at 3, 9, despite Coldwell Banker's explicit requests for email communications pertinent to its

---

[2] After ensuing discovery hearings, the preliminary injunction hearing was delayed again until December 5 and 6, 2022.  Dkt. 62.

claims, *see* Dkt. 38-1 at 18-29 (PX-D).  Coldwell Banker expressed concerns that Wilbur had spoliated emails from her personal @me.com account by deleting or otherwise failing to preserve them.  Dkt. 38 at 14-15 (quoting Ex. P-1 at 107-08).  This concern was wholly justified.  At her September 9, 2022 deposition, Wilbur testified that she had no emails in the @me.com account pre-dating June 24, 2022 (with no explanation why) and had taken no steps to avoid those emails being deleted.  *Id.* at 14 n.48 (quoting Ex. P-1 at 107-08).  Moreover, the record reflected that Wilbur had sent emails to that account with information material to Coldwell Banker's claims.  *See* Dkt. 26 at 22-23 (citing emails to the @me.com account that likely contained Coldwell Banker's confidential and trade-secret information).

Wilbur—in a filing prepared and signed by her counsel, Mr. Williard— responded to Coldwell Banker's allegations in two ways.  *See* Dkt. 50 (filed Oct. 12, 2022).  As one argument, Wilbur cited her objections to two of Coldwell Banker's five requests for production.  Dkt. 50 at 4 (quoting requests and objections to RFP Nos. 1 and 4).  But emails were also sought in Coldwell Banker's requests to which Wilbur raised no objections.  *See* Dkt. 38-1 at 86-87 (PX-R, Wilbur's responses RFPs).  And although Wilbur had objected to producing metadata, she never asserted that Coldwell Banker's demand for production of emails fell beyond the scope of permissible discovery.

More startlingly, however, Wilbur's response blamed Coldwell Banker for the unavailability of emails in her @me.com account. Dkt. 50 at 3. In an affidavit, Wilbur testified that Coldwell Banker had a policy of requiring employees to authorize Coldwell Banker to "'sweep' an employee's phone after termination of their employment with Coldwell Banker" if they accessed their Coldwell Banker email account on a personal device. Dkt. 50-1 ¶ 2. Wilbur then stated, without qualification, that "[t]he 'sweep' essentially restored my phone to factory settings and as such, I was no longer able to access emails sent and received from my CB email *and my personal emails*, text messages, voicemail messages, photos and other data after termination with Coldwell Banker." *Id.* (emphasis added).

This categorical assertion was repeated in the response to the motion to compel, signed and filed by Mr. Williard, which declared that "upon Wilbur's termination of employment with Plaintiff, Wilbur's company-issued computer was returned, and her personal cell phone was 'swept' through a factory reset by Plaintiff" that caused "all of Wilbur's emails [to be] deleted from her cell phone." Dkt. 50 at 3. As became apparent later, Mr. Williard made this accusation without investigating whether that data remained available, despite having retained an eDiscovery vendor, LCG, that had already imaged her devices on September 7 and September 12, 2022. *See* Dkt. 73-1 ¶ 2 (affidavit of Ken Tisdel).

4

The status and availability of Wilbur's emails in the @me.com account consumed part of the ensuing October 14, 2022 hearing on Coldwell Banker's motion to compel, *see* Dkt. 49, which the Court granted almost in its entirety by order entered November 1, 2022.  Dkt. 53 (entered Nov. 1, 2022) (the "Original Discovery Order").  The Original Discovery Order compelled Wilbur (and other individual defendants) to produce communications—including emails—responsive to three requests for production, and to do so within ten days, *i.e.*, by November 11, 2022.  Dkt. 53 at 5-7, 13.  In addition, due to its skepticism of Wilbur's and other defendants' discovery efforts, the Court directed Wilbur to file, within five days, an affidavit or declaration that explained "the contents of her @me.com email address" including the oldest email in that account, the total number of emails currently in the account, the steps she took to ascertain the foregoing information.  *Id.* at 9-11.  To further address the missing emails from Wilbur's @me.com account, the Court also ordered Coldwell Banker to file, by November 6, 2022, a declaration detailing whether Coldwell Banker had issued a directive to wipe Wilbur's iPhone, and whether that phone was, in fact, wiped by Coldwell Banker.  *Id.* at 10.

The very next day, Coldwell Banker filed a declaration of Paul A. Gallo, the Manager of Forensics and eDiscovery Security Operations for Coldwell Banker's parent corporation.  Dkt. 54 (filed Nov. 2, 2022).  Gallo's declaration

refuted Wilbur's allegation that Coldwell Banker had wiped her iPhone or any emails in her @me.com account. *Id.* at 1-2.

Defendants (including Wilbur) then filed an emergency motion to stay the order. Dkt. 56; *see also* Dkt. 57 (amended version). The Court held another hearing on November 3, 2022. Dkt. 78. At the hearing, Mr. Williard disputed the content of Gallo's declaration as "misleading." *Id.* at 22. He asserted that his "IT people" would explain that the "mobile device manager" was to blame for Wilbur's missing emails. *Id.* at 23. The Court granted in part the request for stay, including by extending until November 9, 2022 the deadline for submitting Wilbur's declaration, and directing the parties to meet and confer regarding search terms for responsive emails. Dkt. 59.

Just before the next status conference on November 7, 2022, Coldwell Banker filed a letter informing the Court that Defendants had agreed to use the names and search terms that Coldwell Banker had initially proposed. Dkt. 61 at 1 (citing Dkt. No. 51-1). Wilbur, in particular, agreed to have her three electronic devices (two iPhones and an iPad) re-imaged and to produce all responsive data. *Id.* at 2. But Wilbur refused to produce these emails by the November 11, 2022 deadline. *Id.* at 3. Following a hearing, the Court extended the deadline for producing the emails until November 21, 2022 and gave Wilbur until November 11, 2022 to provide her declaration. Dkt. 62 at 2.

Defendants' motion for stay of the November Discovery Order was therefore denied as moot.  *Id.* at 3.

On November 11, 2022, Wilbur filed her declaration, in which she maintained that Coldwell Banker was to blame for her professed inability to access or locate any emails in her @me.com account.  Dkt. 63.  Responding to Gallo's declaration, Wilbur asserted that Coldwell Banker's act of coding her iPhone as "no longer employed" upon her departure had disassociated the mobile device manager from her iPhone.  *Id.* ¶ 4.  Wilbur continued to point the finger at Coldwell Banker—alleging that Coldwell Banker's actions had "reset" or "wiped" her iPhone.  *Id.*  Yet Wilbur's declaration conceded that she was not "remotely familiar" with these assertions, which instead were "based on information and belief that I have obtained *through my counsel*, who in turn obtained that information from the IT vendor."  *Id.* ¶ 5 (emphasis added).

The Court convened another discovery hearing on November 16, 2022. Dkt. 159.  At the hearing, Mr. Williard blamed the mobile device manager for the delay in collecting and producing Wilbur's responsive emails.  *Id.* at 6 (alleging that the mobile device manager "wreaked havoc on this process"); *see also* Dkt. 64-2 (Nov. 15 letter asserting there were complications "associated with the wiping of [Wilbur's] cell phone").  Ken Tisdel, a representative of eDiscovery vendor LCG, also appeared and provided (unsworn) statements. Dkt. 159 at 7.  Tisdel indicated that LCG had "preserved [Wilbur's] iCloud

account" but "[w]e are not seeing any email" in that account. *Id.* at 18. He said nothing about backups of that iCloud account. Moreover, Tisdel did not "see a reason to disagree" with Gallo's representations that Coldwell Banker "did not go in and wipe any of the text messages or the emails or any of the data." *Id.* at 7. Instead, Tisdel explained that Coldwell Banker had "disassociated Wilbur's account from that mobile device manager" and, in doing so, "cut off access" to the emails. *Id.* at 7-8. The Court ordered further meet-and-confers between Coldwell Banker and its IT personnel, on the one hand, and Wilbur and her IT vendor, LCG, on the other. *Id.* at 48.

But at the same hearing, the Court discovered—for the first time—that Mr. Williard had not directed LCG to collect Wilbur's emails until November 7, 2022. *Id.* at 41. This was months after Coldwell Banker had propounded its requests for production in August 2022, Dkt. 38-1 at 25 (requests served on Aug. 31, 2022), and months after Wilbur's September 9, 2022 deposition that raised significant concerns about the missing emails from her @me.com account, Dkt. 38-1 at 134 . The timing of this collection also showed that Mr. Williard had not attempted to confirm whether Wilbur's phone was, in fact, reset or "swept" by Coldwell Banker before lodging that accusation in the prior response to the motion to compel. *See* Dkt. 50 at 3.

Wilbur and Mr. Williard's repeated insistence that Coldwell Banker had wiped Wilbur's iPhone was exposed as false on November 17, 2022. On that

day, Coldwell Banker, along with Gallo, had a phone call with LCG.  Dkt. 72 at 1.  During that call, Mr. Tisdel, from LCG, conceded that Wilbur's phone was *not wiped*.  *Id.*  Rather, LCG had found *thousands of emails* from Wilbur's @me.com account in iCloud backups of her iPhone 12.  *Id.*  According to Tisdel, those backups were not imaged until November 7 or 8 because Mr. Williard had instructed him not to do so.  *Id.*

Rather than accept responsibility for perpetuating a false narrative, Mr. Williard, on Wilbur's behalf, filed another motion to stay the Court's discovery orders on November 18, 2022.  Dkt. 73.  Incredibly, the motion attempted to spin the belated discovery of Wilbur's emails into an accusation of wrongdoing *by Coldwell Banker* for raising "allegations of spoliation and delay."  *Id.* at 4-5.  Yet even Tisdel's attached affidavit admitted there was "NO EVIDENCE that Plaintiff's IT played any intentional role in giving Ms. Wilbur the perception that her data was missing."  Dkt. 73-1 ¶ 12.

Before Coldwell Banker filed a response brief, the Court issued an order denying the request for stay.  Dkt. 79 (Nov. 21, 2022 order).  In that order, the Court reiterated its concerns regarding Defendants' discovery delays, noting the "myriad filings and hearings" on Wilbur's ESI.  *Id.* at 4-5, 8-9.  The Court also rejected assertions that Wilbur's eDiscovery vendor was "coming into the process somewhat late," emphasizing that LCG already had access to Wilbur's iPhone 12 on September 7—two days before Wilbur's deposition.  *Id.* at 8-9.

During another hearing on November 21, 2022, Mr. Williard tried to downplay his and Wilbur's prior misrepresentations about the availability of emails in Wilbur's @me.com account and the reasons for failing to locate them earlier. Dkt. 106. This time, Mr. Williard tried to characterize the retrieval of those emails as sheer fortuity. *See id.* at 5 (asserting that "miraculously" Tisdel "was able to recover every single @Me email"). Yet when asked why Mr. Williard had not instructed LCG to "promptly investigate" and "ascertain whether this information was retrievable" earlier, he admitted "I don't have a good answer"; he just "thought it had gotten disconnected through the disassociation of that phone with the Coldwell Banker system." *Id.* at 29.

Due to the discovery deficiencies, the date of the preliminary injunction hearing had to be rescheduled multiple times. *See, e.g.*, Dkt. 42; Dkt. 62. Just days before that hearing, the parties entered into a stipulated preliminary injunction. Dkt. 86.

The discovery disputes became even more contentious as the case progressed, spawning numerous additional hearings. At the Court's invitation, Coldwell Banker filed a motion seeking recovery of a portion of its attorneys' fees, expert fees, and costs incurred "while investigating Defendant Jennifer Wilbur's prior (and now-debunked) allegation that Plaintiff deleted her personal emails from her @me.com personal cloud account." *See* Dkt. 105 at 2 (order); Dkt. 112 (motion).

10

In its motion, Coldwell Banker invoked Federal Rules of Civil Procedure 11 and 37, plus the Court's inherent authority, as a basis for imposing sanctions against Mr. Williard and his client, Wilbur.  *See* Dkt. 112 at 11-14. Coldwell Banker sought $92,976.14 in attorneys' fees and $875 in expert costs. *Id.* at 14-20.   Mr. Williard and Wilbur responded, Dkt. 122, and Coldwell Banker replied, Dkt. 136.  Conflicts of interest between Mr. Williard and his client led him to withdraw as counsel.  *See* Dkt. 166.

Subsequently, Coldwell Banker settled its claims with Wilbur.  *See* Dkt. 245; Dkt. 246.  The settlement did not, however, moot its motion for sanctions against Mr. Williard.

### <u>Legal standard</u>

Coldwell Banker invoked three alternative bases for sanctions against Mr. Williard.  *See* Dkt. 112 at 11-14.  The standards and requirements differ for each.

Rule 37(a) contemplates fee-shifting upon granting a motion to compel production of documents.  *See* Fed. R. Civ. P. 37(a)(5)(A).  In such an instance, a court must order the party "whose conduct necessitated the motion, the party *or attorney* advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless

(i)    the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

11

(ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii)   other circumstances make an award of expenses unjust.

*Id.* (emphasis added).  As the plain language of Rule 37 reflects, a finding of bad faith is not required.  *Merritt v. Int'l Brotherhood of Boilermakers*, 649 F.2d 1013, 1018-19 (5th Cir. 1981).  Rather, Rule 37's language "is intended to encourage judges to be more alert to abuses occurring in the discovery process" by requiring an award of expenses if a party lacked substantial justification for resisting discovery.  Fed. R. Civ. P. 37(a)(4) advisory committee's note to 1970 amendment.

In contrast, Rule 11 governs sanctions for false or inaccurate representations in court filings.  *See* Fed. R. Civ. P. 11(b); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (explaining Rule 11's purpose "to deter baseless filings in district court").  By presenting a filing, an attorney certifies, among other things, "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the factual assertions contained therein "have evidentiary support" or would likely be supported "after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  Violations of Rule 11 permit the imposition of sanctions on an attorney or a party responsible for the violation, provided each was provided notice and a reasonable opportunity

to respond.  Fed. R. Civ. P. 11(c)(1); *see also Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 567 (5th Cir. 2006) (Rule 11 authorizes sanctions against "against a client as well as his attorney").

Courts also have inherent power to impose sanctions for litigation abuses, but the threshold for doing so "is high." *See Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).  Ordinarily, a court must rely on a rule or statute, particularly "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).  Nevertheless, a court can rely on its inherent power "if in the informed discretion of the court, neither the statute nor the Rules are up to the task." *Id.*  To invoke this authority, a court must make "a specific finding that the attorney acted in 'bad faith.'" *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995) (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (requiring "specific finding" that counsel's conduct "constituted or was tantamount to bad faith").  And this finding must be supported by clear and convincing evidence.  *See Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 219 (5th Cir. 2023).

## Analysis

Based on the record, the Court concludes that Coldwell Banker is entitled to recover a portion of its requested attorneys' fees and expenses

against Mr. Williard in connection with failing to produce emails whose production Coldwell Banker successfully moved to compel.  But the award is limited to one of the grounds for sanctions that Coldwell Banker invokes.

## I.   <u>Rule 11 does not apply.</u>

Coldwell Banker invokes Rule 11 as a basis for fee-shifting sanctions. *See* Dkt. 112 at 11-14.  But Rule 11 does not authorize the relief it seeks, notwithstanding Mr. Williard's failure to address that provision.  *See* Dkt. 136 at 2 (asserting that Mr. Williard waived any objection to Rule 11 sanctions).

Rule 11 requires that a party serve its motion for sanctions on the offender at least 21 days before the motion is filed.  Fed. R. Civ. P. 11(c)(2). Compliance with the pre-filing requirement is mandatory.  *See Elliott*, 64 F.3d at 216.  This "safe harbor" provision is designed to give the offender an opportunity to rectify the asserted misstatement—and thus avoid sanctions— by withdrawing the offending pleading.  *See Gen. Motors Acceptance Corp. v. Bates*, 954 F.2d 1081, 1086 (5th Cir. 1992) (Rule 11 motion should be filed "within a time frame that has a nexus to the behavior sought to be deterred") (quoting *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 881 (5th Cir. 1988)). Absent such an opportunity, Rule 11 sanctions cannot be imposed.  *See Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000) (Rule 11 sanctions unavailable where motion was not filed "until after trial had concluded,

thereby denying the Tompkinses a reasonable opportunity to correct their complaint").

Rule 11 does not fit this circumstance.  As Coldwell Banker notes, Mr. Williard and his client, Jennifer Wilbur, falsely stated in their October 12, 2022 response to Coldwell Banker's motion to compel that Coldwell Banker had wiped Wilbur's iPhone.  *See* Dkt. 112 at 3-4.  But the falsity of that statement was revealed during a phone call with Wilbur's e-discovery vendor, LCG, on November 17, 2022.  *See* Dkt. 72 at 1.  At that point, Mr. Williard could not have rectified his prior misstatement, much less when Coldwell Banker filed its motion for fee-shifting months later, on April 10, 2023.  Such a motion, premised on misstatements that have already been exposed, cannot support Rule 11 sanctions.  *See Tompkins*, 202 at F.3d at 788.

## II.    **Mr. Williard must pay a portion of Coldwell Banker's attorneys' fees and expert fees under Rule 37(a).**

Rule 37(a) authorizes a subset of the attorneys' fees and expert fees that Coldwell Banker requests.  As noted above, this rule requires this Court to shift attorneys' fees to Mr. Williard, his client, or both, if Coldwell Banker successfully moved to compel, unless (i) Coldwell Banker failed to attempt, in good faith, to obtain the requested information before seeking the Court's intervention; (ii) Mr. Williard's or Wilbur's nondisclosure or other response was

"substantially justified"; or (iii) some other circumstance would "make an award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(A).

No one disputes that Coldwell Banker made good faith efforts to obtain the disputed documents before filing its September 12, 2022 motion to compel. Moreover, the Court did, in fact, compel Wilbur to produce documents responsive to Coldwell Banker's requests for production. *See* Dkt. 53 (granting motion to compel except for RFP No. 1, which was overbroad as written). The central question is whether Mr. Williard had a substantial justification for making certain representations on Wilbur's behalf—later revealed to be false—when responding to the motion to compel, such that he should be exempted from reimbursing Coldwell Banker's fees. In short, the answer is no.

### 1. Factual summary

The crux of this dispute concerns Coldwell Banker's entitlement to obtain emails from Jennifer Wilbur's personal @me.com account. Certain key facts are summarized here but are stated in full above. *See* Background.

Jennifer Wilbur's @me.com emails comprised a key portion of Coldwell Banker's September 12, 2022 motion to compel. *See* Dkt. 38. As the motion explained, Coldwell Banker had recently learned, during Wilbur's deposition, that all emails before June 24, 2022 in her @me.com account were gone. Dkt. 38 at 14 n.48. Wilbur also admitted that she had not taken any steps to preserve those emails. *Id.* at 14-15 & n.49 (citing PX-P-1 at 107-08). This

understandably led Coldwell Banker to raise concerns that Wilbur had spoliated evidence. *See id.* at 14-15. In the same motion, Coldwell Banker asked the Court to overrule Defendants' objections to its requests for production and order that the discovery be produced. *See id.* at 19-20.

Mr. Williard prepared and filed a response that asserted, in critical part, that Coldwell Banker itself was to blame for the unavailability of Wilbur's @me.com emails. *See* Dkt. 50 at 3. The response asserted—categorically, as a known truth—that "upon Wilbur's termination of employment with Plaintiff, Wilbur's … personal cell phone was 'swept' through a factory reset by Plaintiff." *Id.* The response noted that Wilbur had "signed a form" authorizing Coldwell Banker to sweep her phone upon leaving the company. *Id.* And it attached an affidavit from Wilbur, asserting these facts. Dkt. 50-1 at 1-2.

The Court granted Coldwell Banker's motion to compel in all but one small part. *See* Dkt. 53. Because the Court was skeptical of Wilbur's discovery efforts, it ordered her to file an affidavit or declaration that detailed the contents of her @me.com account, as well as what steps she had undertaken to ascertain that information. *Id.* at 9, 10-11. The Court also directed Coldwell Banker to file, by November 6, 2022, a declaration that explained whether the company had wiped Wilbur's device. *Id.* at 10.

The next day, Coldwell Banker submitted a declaration from Paul A. Gallo, who served as Manager of Forensics and eDiscovery Operations for

Coldwell Banker's parent corporation.  Dkt. 54 (filed Nov. 2, 2022).  Mr. Gallo refuted Wilbur's (and Mr. Williard's) assertion that Coldwell Banker had wiped her device or otherwise deleted emails in her @me.com account.  *Id.* at 1-2.

The dispute over Wilbur's @me.com emails carried forward through several hearings.  At a November 3rd hearing, Mr. Williard characterized Gallo's declaration as "misleading" and asked for more time to permit his "IT people" to explain how a "mobile device manager" was responsible for Wilbur's missing emails.  Dkt. 78 at 22-23.  The Court then gave Wilbur until November 9, 2022 to submit her declaration.  Dkt. 59 at 2.  That deadline was pushed until November 11, 2022 after a follow-up hearing on November 7, 2022, where the parties disclosed their agreement to re-image Wilbur's devices.  *See* Dkt. 62 at 2; Dkt. 77 at 5.

When Wilbur filed her affidavit on November 11, 2022, she continued to insist that Coldwell Banker was responsible for her inability to access or locate emails in her @me.com account.  Dkt. 63.  On the one hand, she asserted that Coldwell Banker had disassociated the mobile device manager on her phone upon her departure.  *Id.* ¶ 4.  But she also insisted that Coldwell Banker had "reset" or "wiped" her iPhone.  *Id.*  Tellingly, however, Wilbur admitted she was not "remotely familiar" with these assertions, which instead were "based on information and belief that I obtained through my counsel"—Mr. Williard— "who in turn obtained that information from the IT vendor." *Id.* ¶ 5.

18

But the next discovery hearing on November 16, 2022 was revealing. According to Ken Tisdel, a representative from Defendants' e-discovery vendor, LCG, the issues retrieving Wilbur's emails stemmed from the disassociation of her device from a mobile device manager, which cut off her access to certain information.  Dkt. 159 at 7-8.  As of that date, Tisdel indicated "[w]e are not seeing any email[s] in [Wilbur's] iCloud account."  *Id.* at 18.  According to Tisdel, LCG needed additional information from Coldwell Banker's technical staff to determine if LCG could pull the emails.  *See id.* at 18-20.

Significantly, however, Tisdel testified that Mr. Williard had not even asked him to collect Wilbur's emails until November 7, 2022, *Id.* at 41-42, despite LCG already accessing Wilbur's devices in September 2022, Dkt. 73-1 ¶ 2.  This testimony confirmed that Mr. Williard had taken no steps to verify whether Wilbur's device was, in fact, reset or swept by Coldwell Banker before making that accusation in his October 12, 2022 response to the motion to compel.  *See* Dkt. 50 at 3.

Indeed, the accusation was conclusively refuted during a phone call on November 17, 2022, between Coldwell Banker and LCG.  Dkt. 72 at 1.  During the call, Tisdel admitted that Wilbur's phone was *not wiped*, and that thousands of emails from her @me.com account were found in iCloud backups of phone.  *Id.*  Consistent with his testimony at the prior hearing, Tisdel

indicated that those backups had not been imaged until November 7 or 8 because Mr. Williard had told him not to do so.  *Id.*

Despite these revelations, Mr. Williard insisted, in a November 18, 2022 filing requesting a stay of the Court's discovery orders—which the Court denied, Dkt. 79—that Coldwell Banker had committed wrongdoing by raising "allegations of spoliation and delay."  Dkt. 73 at 4-5.  And Mr. Williard did so even though he attached an affidavit from Tisdel conceding there was "NO EVIDENCE" that Coldwell Banker's IT personnel "played any intentional role in giving Ms. Wilbur the perception that her data was missing."  Dkt. 73-1 ¶ 12.

> ### 2.   Mr. Williard lacked a substantial justification for resisting discovery of Wilbur's emails.

The protracted litigation over Wilbur's @me.com emails leads to several conclusions.  First, because Coldwell Banker largely prevailed on its initial October 2022 motion to compel, it is entitled to recovery of attorneys' fees "incurred in making the motion" unless an exception exists.  *See* Fed. R. Civ. P. 37(a)(5)(A).  Mr. Williard responds that Wilbur "never failed to produce documents" as necessary to trigger this provision because "she simply lost access to her @me account."  Dkt. 122 at 11-12.  This position ignores the fact that Mr. Williard inaccurately stated, without any caveats, that Coldwell Banker had deleted those emails, as a justification for failing to produce them.  *See* Dkt. 50 at 3.  While Mr. Williard's statement parroted inaccurate

assertions by his client, he failed to investigate their truth.  Mr. Williard thus unreasonably and unjustifiably ran up Coldwell Banker's expenses trying to obtain the emails whose production the Court had compelled.

Ordinarily, a successful motion to compel would entitle the movant to recover only those fees incurred to that point.  But in this case, Coldwell Banker's motion to compel spanned numerous hearings.  Only after multiple hearings did Mr. Williard's e-discovery vendor determine that thousands of emails existed in backups of Wilbur's iCloud account.  And the Court had ordered production of all responsive emails, including from that account.

Second, the false representations about the unavailability of the @me.com emails expose the lack of substantial justification for failing to timely produce them.  Mr. Williard cites a case for the principle that "[s]ubstantial justification is that which would satisfy a reasonable person that disclosure was or was not required under the applicable law."  Dkt. 122 at 14 (quoting *Chapa v. Am. Airlines Grp., Inc.*, 2022 WL 7710553, at *2 (S.D. Tex. Sept. 7, 2022)).  But on this record, a reasonable attorney would not have blindly relied on his client's assumptions that the opposing party had wiped her device.

To be sure, Wilbur started this mess by *assuming* that her inability to access those emails meant that Coldwell Banker had swept her phone.  Dkt. 50-1 ¶ 2—a position that was immediately refuted by Coldwell Banker's personnel, Dkt. 54, and later rejected by Wilbur's own e-discovery vendor, Dkt.

73-1 ¶ 12.  The response to Coldwell Banker's fee-shifting motion attempts to minimize this assertion, by noting that Wilbur was simply confused as to why the emails were no longer accessible to her.  *See* Dkt. 122 at 13-15.

But her counsel, Mr. Williard, chose to proffer this unsubstantiated assertion when he signed and filed an opposition to Coldwell Banker's motion to compel.  *See* Dkt. 50 at 3.  In that brief, Mr. Williard declared, unequivocally, that "*the facts are*" that Coldwell Banker "'swept' [Wilbur's phone] through a factory reset" that deleted "all of Wilbur's emails ... from her cell phone." Dkt. 50 at 3 (emphasis added).  As was later revealed, however, Mr. Williard had done nothing at that point to verify those supposed "facts," including whether those emails still existed.  *See* Dkt. 159 at 41 (Tisdel's admission that Mr. Williard did not instruct LCG to collect Wilbur's emails until November 7, 2022).  As it turns out, they were there all along, in Wilbur's iCloud backup. *See* Dkt. 73-1 at 3.

Mr. Williard thus resorted to accusing Coldwell Banker of wiping Wilbur's device—in unqualified terms—all before taking any reasonable steps to determine whether the facts supported that position.  And he unreasonably relied on that misstatement as a justification for failing to produce documents from Wilbur's @me.com account.

Under these circumstances, Mr. Williard's claimed reliance on his client's assumptions was unreasonable, even if it does not evince bad faith.  *See*

*Merritt*, 649 F.2d at 1018-19 (bad faith is not necessary to impose sanctions under Rule 37).  Such reliance cannot immunize Mr. Williard from having to pay Coldwell Banker's reasonable attorneys' fees and expenses incurred by his untenable opposition to discovery.

> 3.   Only a portion of Coldwell Banker's fees should be shifted to Mr. Williard.

Nevertheless, Coldwell Banker's fee application, which seeks a total of $76,134.49 in attorneys' fees, including $16,841.75 for preparing the motion for fee-shifting, is over-inclusive.[3]  The hearings and correspondence both before and after the filing of Coldwell Banker's motion to compel largely addressed issues other than Wilbur's @me.com email.  Many of those attorney hours would have been expended regardless of Mr. Williard's conduct related to the failure to timely and properly respond to the request for production from Wilbur's @me.com account.  Moreover, as addressed above and further below, Coldwell Banker's motion for fee-shifting invokes authorities that do not provide a basis for relief.  This means Coldwell Banker cannot prevail entirely on its motion.  Coldwell Banker's partial success, coupled with an appropriate reduction to account for expenses tied to other discovery issues, warrants

---

[3] There is no dispute that the hourly rates of Coldwell Banker's counsel are reasonable, given counsel's experience and other qualifications.

reducing the amount sought to $9,000, which includes $875 in expert fees incurred debunking Mr. Williard's misstatement.

## III.   **The Court declines to rely on its inherent authority to impose broader sanctions.**

Given the determination that Coldwell Banker can recover some of its attorneys' fees under Rule 37(a)(5)(A), the Court declines to impose broader sanctions under its inherent authority.   This comports with the general principle that inherent authority must be "exercised with restraint and discretion," and that courts "ordinarily should rely on the [Federal] Rules rather than [their] inherent power." *Chambers*, 501 U.S. at 44, 50.

Moreover, Mr. Williard's conduct, though lacking substantial justification, does not rise to the level of bad faith.   At most, Mr. Williard's failure to investigate facts at his disposal, before making factual assertions to the Court, evinces a reckless disregard for the truth.   Recklessness, however, is insufficient to warrant sanctions based on the Court's inherent authority. *See Nat'l Oilwell Varco, L.P.*, 68 F.4th at 220.

Of course, Mr. Williard's conduct understandably frustrated Coldwell Banker and needlessly consumed resources.   On many occasions, Mr. Williard attempted to hide behind his ignorance of basic e-discovery procedures. *See, e.g.*, Dkt. 78 at 10-11 (Mr. Williard claiming "my technical capabilities are limited" and that he was "just completely ignorant about" e-discovery

protocols).   But as part of their duty to provide competent representation, attorneys must educate themselves about technology relevant to the practice of law.  *See* Tex. Discipl. R. Prof'l Conduct 1.01, cmt. 8.  Mr. Williard's professed lack of proficiency with e-discovery therefore does not excuse his conduct.

Along those lines, this opinion should serve as a warning to Mr. Williard that failure to adequately understand the e-discovery process cannot justify failing to properly participate in that process.  With respect to the limited issue concerning his client's @me.com account, however, the Court does not find that any sanctions other than those under Rule 37 are appropriate.

## Conclusion

For the foregoing reasons, it is **ORDERED** that Plaintiff NRT Texas, LLC d/b/a Coldwell Banker Realty and Coldwell Banker United, Realtors's motion for fee-shifting (Dkt. 112) is **GRANTED IN PART** and **DENIED IN PART**.   Counsel Steve Williard is **ORDERED** to pay $9,000 to Coldwell Banker for its reasonable attorneys' fees and costs incurred in connection with its successful September 12, 2022 motion to compel the production of emails in Jennifer Wilbur's @me.com personal email account.

Signed on January 22, 2024, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge

25